## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | | |
|---|---|---|---|
| TYREE MILLER, | ) | | |
| | ) | | |
| Movants/Defendants, | ) | | |
| | ) | | |
| v. | ) | Crim. Act. No. | 18-89-CFC-2 |
| | ) | Civ. Act. No. | 19-1598-CFC-2 |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent/Plaintiff. | ) | | |

## **MEMORANDUM OPINION**

_____

Tyree Miller. *Pro se* Movant.

Shawn Weede. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

_____

August 11, 2022
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

## I.  INTRODUCTION

Movant Tyree Miller has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  (D.I. 72)  The United States filed an Answer in Opposition.  (D.I. 107)  For the reasons discussed, the Court will deny Movant's § 2255 Motion without holding an evidentiary hearing.

## II.  BACKGROUND

Between August 2, 2018 and August 16, 2018, Movant and his co-defendants committed six armed commercial robberies (of three 7-Eleven Stores, one Royal Farms store, one Wawa store, and Steve's Discount Liquors) and one unarmed demand-note bank robbery (Wells Fargo Bank).  (D.I. 66 at 4-5; D.I. 107 at 3-5)  In each of the commercial robberies, Movant entered the store wearing a mask and carrying a firearm, and demanded money and/or cigarettes.  (D.I. 66 at 4; D.I.107 at 3-5; D.I. 107-1 at 23-24)  During the August 9, 2018 bank robbery, Movant entered the bank and presented a note to the teller which read, "I'm not alone we need 4 envelopes All Hundreds calmly Nobody dies!"  (D.I. 107 at 4)

In November 2018, a federal grand jury returned a nine-count indictment against Movant and two co-defendants, specifically charging Movant with the following three counts: (1) bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2 (Count Six); (2) Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Eight); and (3) knowingly using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1) and (2) (Count Nine).  (D.I. 2)

On April 15, 2019, Movant waived indictment and pled guilty to a nine-count superseding information charging him with Hobbs Act Robbery in violation of 18 U.S.C. §1951(a) and 2 (Counts One, Two, Three, Five, Seven and Eight); using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Four and Nine); and bank robbery, in violation of 18 U.S.C. § 2113 and 18 U.S.C.§ 2113(a)(2) (Count Six).   (D.I. 48; D.I. 49; D.I. 50)

On July 26, 2019, the Court sentenced Movant to a total of 216 months of imprisonment.  (D.I. 71 at 3)

## III.   DISCUSSION

Claims One through Six assert the following ineffective assistance of counsel claims: (1) defense counsel failed to properly investigate the facts and discover if the victims of his crimes would have testified against Movant had he elected to proceed to trial, and also failed to file a motion to withdraw Movant's guilty plea on the ground that there were no victims who would have testified (D.I. 72 at 1-2); (2) defense counsel did not permit Movant's mother to see the discovery against Movant (D.I. 72 at 2, 8); (3) defense counsel allowed Movant to be incarcerated with his co-defendants, which put his life in danger and increased the likelihood that Movant's co-defendants could coerce Movant into accepting the plea offer for "things they had done" (D.I 72 at 2-3); (4) defense counsel neglected to present the issue of Movant's "mental disability" to the Court during Movant's plea and sentencing hearings (D.I. 72 at 3-5, 9); (5) defense counsel did not move to suppress text messages recovered from Movant's phone and did not disclose various miscellaneous information about Movant to the judge during the

2

plea hearing (D.I. 72 at 5-6); and (6) defense counsel failed to object to certain issues and failed to provide miscellaneous information during the sentencing hearing to support a lesser sentence (including the issue of Movant's "mental disability"), and also improperly instructed Movant not to write to the Court (D.I. 72 at 6-7, 9). In Claim Seven, Movant asserts that the Court was prejudiced against him and predetermined his sentence (D.I. 72 at 7-8).

### A. Ineffective Assistance of Counsel Claims

Movant has properly raised his ineffective assistance allegations in a § 2255 Motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Both *Strickland* prongs must be satisfied in order for a movant to successfully show that defense counsel rendered constitutionally ineffective assistance, and the Court can choose which prong to address first. *See Strickland,* 466 U.S. at 668.

Under the first *Strickland* prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. In evaluating an attorney's conduct, a court must avoid "the distorting effects of hindsight" and must "evaluate the conduct from counsel's perspective at the time." *Id.* at 687. Under the second *Strickland* prong, a movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id.* at 694; *United States v. Nahodil*, 36 F.3d

3

323, 326 (3d Cir. 1994).  In the context of a guilty plea, a movant satisfies *Strickland*'s

prejudice prong by demonstrating that, but for counsel's error, there is a reasonable

probability that he would have insisted on proceeding to trial instead of pleading guilty.

*See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The *Strickland* standard is highly

demanding and leads to a strong presumption that counsel's representation was

professionally reasonable.  *See Strickland,* 466 U.S. at 689.

> **1.  Claim One: Defense counsel failed to investigate the case and produce witnesses, and should have moved to withdraw Movant's plea**

Claim One asserts the following two sub-arguments: (1) the absence of victims at

Movant's plea hearing should have prompted defense counsel to conduct an intense

investigation to see if any victims would have appeared at trial to testify against him;

and (2) defense counsel was ineffective for not filing a motion to withdraw Movant's

guilty plea based on the argument that the Government would not have been able to

produce any victims had Movant proceeded to trial.  Both sub-arguments are unavailing.

> **a.  Failure to investigate availability of victims**

It is well-settled that "[s]olemn declarations in open court carry a strong

presumption of verity" that create a "formidable barrier in any subsequent collateral

proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Consequently, once a

defendant has entered a guilty plea, that defendant's "subsequent presentation of

conclusory allegations unsupported by specifics is subject to summary dismissal, as are

contentions that in the face of the record are wholly incredible." *Id*.

4

Here, the transcript of Movant's plea colloquy contains his clear and explicit statements that he discussed his case with defense counsel and that he was satisfied with his counsels' representation.  (D.I. 107-1 at 5, 19)  Movant also stated that: (1) he had been treated for ADHD (D.I. 107-1 at 4); (2) he was not under the influence of drugs and he understood what was going on during the change of plea hearing (D.I. 107-1 at 4-5); (3) he understood the constitutional rights he was waiving by pleading guilty (D.I. 107-1 at 5, 14, 21-22); (4) he was pleading guilty of his own free will because he was, in fact guilty, and he recounted the facts of the offenses he committed (D.I. 107-1 at 23-24); (5) **he understood that the Government did not need to present any witnesses or evidence due to his decision to enter a guilty plea** (D.I. 107-1 at 22) (emphasis added); (6) he had not been promised anything not contained in the plea agreement (D.I. 107-1 at 13); (7) he was not forced or threatened to enter the plea agreement (D.I. 107-1 at 13-14); and (8) he knew he faced a possible maximum statutory penalty of life imprisonment with a mandatory minimum sentence of 14 years of imprisonment (D.I. 107-1 at 14-15).  Movant has not presented any evidence or argument in this proceeding demonstrating why his explicit statements during the plea colloquy— including, but not limited to, statements that he was satisfied with defense counsel's representation, he was guilty of the charged offenses, and that he understood his decision to enter a guilty plea eliminated the need for the Government to produce any evidence or witnesses—should not be presumptively accepted as true.  Therefore, based on the aforementioned record, the Court concludes that defense counsel's alleged failure to investigate whether any victims would have attended a trial had

5

Movant decided to proceed to trial did not amount to ineffective assistance under *Strickland*.

### b.  Failure to file motion to withdraw plea

Movant's contention that defense counsel was ineffective for failing to file a motion to withdraw Movant's guilty plea based on the absence of victims at the plea hearing also does not warrant relief.  As an initial matter, Movant's speculative assumption that the absence of victims at his plea hearing demonstrates that the Government would have been unable to call witnesses against him at trial is not supported by the record.  As the Government explains in its Response, it would have presented the testimony of the individuals who witnessed Movant's offenses, as well as videos of each of the robberies. (D.I. 107 at 11)

Additionally, sub-argument two fails under *Strickland*'s prejudice prong, because Movant has not demonstrated a reasonable probability that a motion to withdraw his plea would have succeeded.  Under Federal Rule of Criminal Procedure 32(e), "[i]f a motion to withdraw a plea of guilty or nolo contendre is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason."  Fed. R. Cr. P. 32(e).  The defendant's burden of demonstrating a fair and just reason for withdrawing a plea is substantial.  *See United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).  A district court must consider three factors (the "*Jones'* factors") when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.  *See*

*Jones,* 336 F.3d at 252; *see also United States v. Brown,* 250 F.3d 811, 818 (3d Cir. 2001); *United States v. Wilder,* 204 F. App'x 146, 148 (3d Cir. 2006). The Third Circuit has cautioned that a "shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Jones,* 336 F.3d at 252. Notably, a court does not need to determine if the government would be prejudiced by the withdrawal of a guilty plea (factor three) if the defendant fails "to demonstrate that the other [two] factors support a withdrawal of the plea." *Id.* at 253.

Turning to the first *Jones'* factor, "[o]nce a defendant has pleaded guilty, he must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court." *Jones,* 336 F.3d at 253. Significantly, Movant never asserted his innocence during his plea hearing. Instead, as demonstrated by the following exchange between Movant and the Court, Movant actually established the factual basis for the charges against him:

> COURT: Are you pleading guilty of your own free will because you are guilty?
>
> MOVANT: Yes, sir.
>
> COURT: So then tell me what in your own words makes you think you should be pleading guilty.
>
> MOVANT: I went into the stores brandishing a gun and robbed them.
>
> COURT: And I just want to make sure I understand. So you did that first for the 7-Eleven at 1901 Centerville in August?

7

MOVANT:     Yes sir.

COURT:      2018. And you did it with some other people?

MOVANT:     Yes sir.

COURT:      Who were they?

MOVANT:     Fabian Evans and D'Andre Whittle.

COURT:      And then you robbed the 7-Eleven at 284 Christiana Road in New Castle the next day?

MOVANT:     Yes sir.

COURT:      And did you rob the Royal Farms at 3701 Kirkwood Highway on August 5th?

MOVANT:     Yes, sir.

COURT:      And when you robbed the Royal Farms on August 5th, did you brandish a firearm?

MOVANT:     Yes, sir.

COURT:      And also on that date did you with a gun the 7-Eleven at 201 Market Street in Newport?

MOVANT:     Yes, sir.

COURT:      On August 9, 2018, did you rob the Wells Fargo at 3215 Old Capital Train in Wilmington?

MOVANT:     Yes, sir.

COURT:      On August 14th 2018, did you rob a Wawa at 605 Yorklyn Road in Hockessin, Delaware?

MOVANT:     Yes, sir.

COURT:      On August 16th 2018, did you rob with a firearm Steve's Discount Liquor at 1204 Centerville Road in Wilmington, Delaware?

8

| | |
|---|---|
| MOVANT: | Yes, sir. |
| COURT: | And did you brandish a firearm when you robbed the Steve's Discount Liquors on August 16th? |
| MOVANT: | Yes, sir. |

(D.I. 107-1 at 31)  Following this exchange between the Court and Movant, the Government presented a summary of the extensive evidence it would have presented had Movant elected to go to trial, and the Court again verified that Movant was acknowledging his guilt:

| | |
|---|---|
| COURT: | [Movant], do you agree that the prosecutor has accurately summarized the evidence she would present at trial? |
| Movant: | Yes, sir. |

(D.I. 107-1 at 31)

Also noteworthy is the fact that Movant does not assert his actual innocence in this proceeding, nor does he provide any reason explaining why he took the contradictory position of admitting his guilt during the plea hearing.  Given all these circumstances, the Court concludes that the first *Jones'* factor would have weighed against allowing Movant to withdraw his plea.

With respect to the second *Jones'* factor, Movant asserts that defense counsel should have moved to withdraw his guilty plea on the ground that no victims attended his plea hearing.  Although Movant contends that the absence of victims at his plea hearing demonstrates that the Government would have been unable to call any victims to testify against him had he proceeded to trial, this contention constitutes mere

9

speculation rebutted by the Government's Response and does not provide a sufficient reason to withdraw his guilty plea. Thus, the Court concludes that the second *Jones'* factor would have weighed against allowing Movant to withdraw his plea.[1]

Having found that Movant failed to assert his innocence and failed to meet his burden of showing a sufficient reason to withdraw his plea, the Court need not consider whether the Government would suffer prejudice if the plea were withdrawn. Therefore, based on the foregoing analysis, the Court concludes that any attempt on Movant's part to withdraw his guilty plea would have been futile.

It is well-settled that an attorney does not provide ineffective assistance by failing to present meritless arguments. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Having determined that Movant's underlying argument for filing a motion to withdraw his guilty plea—namely, that the Government would have been unable to produce any victims during a trial—lacks merit, Movant cannot demonstrate a reasonable probability that the Court would have granted a motion to withdraw Movant's guilty plea if defense counsel had filed one. Thus, defense counsel did not provide

---

[1]To the extent defense counsel's "errors" alleged in Claims Two through Five should be considered together and treated as an additional reason for the purposes of the second *Jones'* factor analysis, the Court would still conclude that Movant has failed to provide an adequate reason for withdrawing his guilty plea. As explained in the Court's subsequent discussion concerning Claims Two through Five, the Court accepts as true the assertions Movant made under oath during his plea colloquy that he was satisfied with counsel's representation, that he was knowingly and willingly entering his guilty plea, and that he was, in fact, guilty as charged. *See infra* at Section III.A.2. Since the record belies the "errors" Movant attributes to defense counsel in Claims Two through Five, those "errors" would not have provided support for granting a motion to withdraw Movant's plea.

ineffective assistance by failing to file a motion to withdraw Movant's guilty plea on the ground he suggests.

Accordingly, the Court will deny Claim One in its entirety.

### 2. Claims Two through Five: Defense counsel provided ineffective assistance for asserted reasons during the plea process

In Claims Two through Five, Movant contends that defense counsel provided ineffective assistance by: (a) not permitting Movant's mother to see the discovery against him (Claim Two) (D.I. 72 at 2, 8); (b) permitting Movant to be incarcerated with his co-defendants, because the proximity to his co-defendants put his life in danger and increased the likelihood that Movant's co-defendants could coerce Movant into accepting the pleas for "things they had done" (Claim Three) (D.I 72 at 2-3); (c) failing to have the Court consider Movant's "mental disability" (*i.e.*, the fact that he has a learning disability and suffers from attention-deficit and hyperactivity disorder, and that he was suicidal) at his plea hearing (Claim Four) (D.I. 72 at 3-5, 9); and (d) failing to move to suppress text messages recovered from Movant's phone (Claim Five) (D.I. 72 at 6-7).

As previously discussed, Movant's unsupported allegations in Claims Two through Five fail to provide compelling evidence as to why the statements he made during the plea hearing—*e.g.*, that he was satisfied with defense counsel's representation and he was, in fact, guilty—should not be presumptively accepted as true. Having no cause to doubt the veracity of Movant's statements at the time of his plea hearing provides a sufficient basis for concluding that defense counsel did not provide ineffective assistance as asserted in Claims Two through Five. The Court also

concludes that Claims Two through Five do not warrant relief for the following additional reasons.

Claims Two and Five—which allege that defense counsel committed the non-jurisdictional[2] pre-plea "errors" of not permitting his mother to see the discovery against him and failing to move to suppress texts on his phone—were waived when Movant entered his guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *Menna v. New York*, 423 U.S. 61, 62 n. 2 (1975) (explaining that voluntary and knowing guilty plea bars a defendant from raising antecedent non-jurisdictional constitutional violations "not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is established.").

Claims Three and Four—which assert that defense counsel was ineffective for failing to recognize that Movant's incarceration with his co-defendants somehow coerced him to plead guilty and for not presenting the issue of Movant's incompetence to the Court during Movant's plea hearing—were not waived by Movant's guilty plea, because the alleged errors challenge the voluntariness of the plea itself. *See, e.g.,*

---

[2]As noted by the Court of Appeals for the Tenth Circuit, the term non-jurisdictional is somewhat confusing and "[t]he most accurate statement of the law would be … [that a] guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court." *United States v. DeVaughn*, 694 F.3d 1141, 1193 (10th Cir. 2012).

*United States v. Lora*, 2021 WL 4622255, at *1 n. 5 (3d Cir. Oct. 7, 2021).

Nevertheless, neither Claim warrants relief.  During his plea hearing, Movant explicitly

stated that he had not been threatened or forced into entering a guilty plea, and that he

understood he would not be able to withdraw his plea at a later date on this basis since

he could have shared such threats with the Court during the plea colloquy.  (D.I. 107-1

at 13-14)  In this proceeding, Movant does not allege that being housed in proximity with

his co-defendants actually coerced him to enter a guilty plea.  Rather, Movant alleges

that defense counsel was ineffective for failing to recognize the *possibility* that Movant

may have felt coerced into pleading guilty as a result of his being housed in the same

correctional institution.  Movant's unsupported and speculative assertion does not rebut

the presumption of truthfulness attached to the statements he made during his plea

hearing.

As for Claim Four's assertion that defense counsel failed to raise the issue of

Movant's "mental disabilities" to the Court, the record lacks "sufficient indicia" of

Movant's alleged incompetence to establish defense counsel's ineffective assistance.

See *Jermyn v. Horn*, 266 F.3d 257, 283, 300 (3d Cir. 2001) (holding that counsel's

failure to inquire into a defendant's competency and/or request a competency hearing

can constitute ineffective assistance if there are sufficient indicia of incompetence to

give objectively reasonable counsel reason to doubt the defendant's competency).  The

only "mental disabilities" Movant explicitly identifies in his Motion are his learning

disability, diagnosis of ADHD, and the fact that he was suicidal at some point in time.

(D.I. 72 at 3-5)  Since Movant is proceeding *pro se*, the Court liberally construes

13

Movant's assertion that he suffered from "mental disabilities" to include the information concerning his mental health set forth in the PSR. (*See* D.I. 70 at 18-20)  According to the PSR, Movant has participated in mental health counseling "on and off since he was sixteen years old" and is currently taking an antidepressant, although he is not suffering from a major mental disorder.  (D.I 70 at 30)

The fact that a person suffers from mental illness and is taking medication for that mental illness does not, on its own, provide a reason to doubt the person's competency to stand trial. *See Jermyn*, 266 F.3d at 293.  A person is competent to stand trial when he has a "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" and possesses "a rational as well as factual understanding of the proceedings against [him]." *Dusky v. United States*, 362 U.S. 402 (1960).  "To be legally incompetent, [the person's] mental illness must have rendered [him] unable to consult with [his] attorney or understand the proceedings at the time of trial." *Cherys v. United States*, 552 F. App'x 162 (3d Cir. Jan. 9, 2014). "[E]vidence of a defendant's irrational behavior, [his] demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but ... even one of these factors standing alone may, in some circumstances, be sufficient." *Drope v. Missouri*, 420 U.S. 162, 180 (1974).

In this case, prior to entering the guilty plea, the Court asked Movant if he had ever been treated for any form of mental illness, to which Movant responded, "No. ADHD." (D.I. 107-1 at 4)  The Court then asked Movant if he understood what was going on, and whether he had discussed the charges and plea agreement with defense

14

counsel.  Movant answered these questions affirmatively.  (D.I. 107-1 at 5-7)  The Court also asked defense counsel whether he had any reason to doubt Movant's competence to proceed, to which defense counsel responded, "I do not, Your Honor."  (*Id.* at 5)  Notably, Movant never mentioned the issue of his competency and the Court's thorough colloquy did not suggest that Movant's competency was at issue.  Given the absence of "sufficient indicia of incompetence," the Court concludes that Claim Four fails to warrant relief.  *See, e.g., Taylor v. Horn*, 504 F.3d 416, 439 (3d Cir. 2007).

In sum, based on the aforementioned record, the Court concludes that the arguments presented in Claims Two through Five fail to satisfy either prong of the *Strickland* standard.

### 3.  Claim Six: Defense counsel provided ineffective assistance during the sentencing hearing

In Claim Six, Movant asserts that defense counsel provided ineffective assistance during his sentencing hearing by: (a) failing to present evidence of Movant's mental health problems and failing to present information provided to the probation officer by his mother; (b) failing to inform the Court that Movant did not have a prior record; (c) failing to object to evidence of his marijuana use; (d) failing to present any testimony from his family or friends; and (e) instructing Movant not to write to the Court. (D.I. 72 at 6, 8-9)  The Presentence Report (PSR), sentencing memorandum filed by defense counsel, and transcript of the sentencing hearing belie Movant's assertions and demonstrate that Movant cannot satisfy the prejudice prong of *Strickland*.

For instance, the PSR explains that Movant reported using marijuana beginning at age 13 and continuing until the date of his arrest. (D.I. 70)  During the sentencing

15

hearing, Movant affirmed that he began using marijuana at age 13 and used it "pretty much every day." (D.I. 107-2 at 29) Given the PSR's discussion of Movant's marijuana use and Movant's own admission during sentencing about his marijuana use, defense counsel had no basis to object to the evidence of Movant's marijuana use.

The PSR also contains extensive information about Movant's mental health history and includes details provided by his mother, and defense counsel's sentencing memorandum references Movant's mental health history, including a Psychological Evaluation prepared by Jeffrey E. Summerton, Ph.D. (D.I. 63 at 7) In addition, defense counsel provided the Court with Dr. Summerton's Psychological Evaluation, the Release Summary of the Delaware Psychiatric Center, and the Psychological Assessment prepared by Earl E. Walker, Jr. (*See* Defense letter to Court with submissions, D.I. 67 and D.I. 68) Thus, contrary to his assertion, defense counsel did provide the Court with information regarding Movant's mental health.

As for Movant's contention that defense counsel did not alert the Court that he had no prior record, both the PSR and defense counsel's sentencing memorandum state that Movant had never been in jail before and that he had no criminal history points. (D.I. 63 at 9-10) Similarly, despite Movant's contention that defense counsel did not present any testimony from family or friends, defense counsel submitted letters of support from three individuals who knew Movant (D.I. 68) and, at the beginning of the sentencing hearing, alerted the Court to the presence of several individuals who were there in support of Movant and presented the testimony of Movant's step-father. (D.I. 107-2 at 9-17)

16

Movant also contends that defense counsel instructed him not to write to the Court, and he lists several items that he *might* have wanted to tell the Court. Yet, the transcript of the sentencing hearing reveals that Movant actually did address the Court but never mentioned any of the possible topics listed in this proceeding. Moreover, Movant told the Court he was happy with defense counsel's representation.

Finally, the transcript of the sentencing hearing shows that the Court acknowledged reviewing the PSR, psychological reports and assessments, letters of support on behalf of Movant, and the Government's and Movant's sentencing memoranda.

In short, the record demonstrates that the Court was aware of all the relevant information Movant alleges defense counsel failed to provide the Court for sentencing. Accordingly, Movant cannot demonstrate prejudice, and the Court will deny Claim Six as meritless.

**B. Claim Seven: The Court Imposed a Predetermined Sentence**

Paragraph Fifteen of the Memorandum of Plea Agreement contains the following appellate/collateral attack waiver:

> The Defendant knows that he has, and voluntarily and expressly agrees to waive, the right to file any appeal, any collateral attack, or any other writ or motion in this criminal case after sentencing – including, but not limited to, an appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, or a motion under 28 U.S.C. § 2255. Notwithstanding the foregoing, the defendant reserves his right (1) file an appeal or other collateral motion on the grounds that he received ineffective assistance of counsel; and (2) to appeal his sentence if: (a)  the government  appeal  from  the  sentence,  (b)  the defendant's sentence exceeds the statutory maximum

17

> for the offense set forth in the United States Code, or
> (c) the sentence unreasonably exceeds the Sentencing
> Guideline range determined by the District Court in
> applying the United States Sentencing Guidelines.

(D.I. 70 at ¶15)  In Claim Seven, Movant contends that the Court was biased against him and predetermined his sentence.  Since this Claim does not allege ineffective assistance of counsel, the Court must determine if the Claim falls within the purview of the collateral attack waiver.

The validity of an appellate/collateral attack waiver provision is a "threshold issue that must be addressed before reaching the merits of the underlying claim.[3]  *See United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008).  As a general rule, courts will enforce a defendant's waiver of his appellate/collateral rights if it is "entered knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." *Id.* at 236-37.  A court has an affirmative and "an independent obligation to conduct an evaluation of the validity of a collateral waiver." *Id.* at 238.  Specifically, a court must consider: (1) whether the waiver was knowing and voluntary; (2) whether there is an exception to the waiver which prevents its enforcement; and (3) whether enforcement of the waiver would cause a miscarriage of justice.  *See United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008).

---

[3]The collateral attack waiver does not preclude Movant from raising a claim of ineffective assistance of counsel.  Thus, the Court did not need to consider the validity of the waiver prior to addressing Movant's ineffective assistance of counsel allegations in Claims One through Six in Section III.A.

The Court and the Government specifically addressed the appeal waiver at

Movant's plea colloquy (D.I. 107-1 at 11), and the record clearly demonstrates that

Movant understood the waiver's significance:

|  |  |
|---|---|
| GOVERNMENT: | Paragraph 15 acknowledges that [Movant] has specifically waived certain rights of appeal, including a direct appeal or a collateral attack. |

(D.I. 107-1 at 11)

              \*            \*            \*            \*

|  |  |
|---|---|
| COURT: | So if I look at paragraph 15 of your plea agreement, it says that you know and you have voluntarily and expressly waived the right to file any appeal, any collateral attack, and that's like a writ of habeas corpus.  You've probably heard of that.  Right? |
| MOVANT: | No, sir. |
| COURT: | There's a thing called habeas corpus.  It means if somebody is in prison unlawfully in violation of the constitution, they can file a motion, but you're giving up largely that right and your right to appeal the sentence and with a couple of exceptions, and let's talk about the exceptions, where you keep your right to appeal or file a collateral attack.<br><br>First of all, you could on the grounds that you received ineffective assistance of counsel.<br><br>Do you understand that? |
| MOVANT: | Yes, sir. |

COURT:  Now, in this case, you received the advice of [defense counsel].  Do you have any reason to believe or do you believe now that he has given you ineffective assistance of counsel?

MOVANT:  No, sir.

COURT:  Have you been happy with his representation of you?

MOVANT:  Yes, sir.

COURT:  And you've had an opportunity to discuss with him and ask him all the questions you might have about this proceeding and your plea.

Is that right?

MOVANT:  Yes, sir.

COURT:  Now, you would also have the right to appeal your sentence if the Government appeals from the sentence. You would also have the right to appeal your sentence or file a collateral attack if the sentence exceeded the statutory maximum.  It's not going to do that.  I'm not going to exceed the statutory maximum.

And, finally, you would have the right to file an appeal or file a collateral attack if the sentence unreasonably exceeded the sentencing guidelines range determined by the Court in  applying the United States Sentencing Guidelines.

And do you understand that?

MOVANT:  Yes, sir.

(D.I. 107-1 at 19-20)

20

After questioning Movant further during the plea colloquy, the Court found that Movant "is fully competent and capable of entering an informed plea, that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses." (D.I. 107-1 at 32) Given these circumstances, the Court concludes that Movant has failed to demonstrate that his appellate/collateral waiver was not knowing and voluntary.

The Court also finds that Movant's challenge to his sentence as asserted in Claim Seven falls within the scope of the waiver. According to the waiver provision, Movant waived "any collateral attack" after sentencing, including § 2255 motions. None of the exceptions to the waiver apply to Movant's Claim. For example, the Government did not appeal the sentence, and Movant does not challenge his sentence on the ground that it exceeds the statutory limits or unreasonably exceeds the sentencing guideline range determined by the Court in applying the sentencing guidelines. Therefore, Claim Seven does not prevent the enforcement of the waiver.

Finally, the Court must determine if enforcing the waiver will result in a miscarriage of justice. When determining whether a miscarriage of justice will occur if the waiver were enforced, there is no specific list of circumstances that would constitute a miscarriage of justice. *Mabry,* 536 F.3d at 242. Rather, a court must apply a commonsense approach and evaluate "the clarity of the error, its gravity, its character (*e.g.*, whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government and the extent to which the defendant acquiesced in the result." *United*

*States v. Khattak*, 273 F.3d 557,563 (3d Cir. 2001).  To that end, granting an exception to a waiver based on a miscarriage of justice must be done "sparingly and without undue generosity,"[4] and only where "manifest injustice" would result by enforcing the waiver.  *See United States v. Gwinnett*, 483 F.3d 200, 206 (3d Cir. 2007).

A consideration of the *Khattak* factors demonstrates that the enforcement of Movant's waiver would not work a miscarriage of justice.  First, Movant cannot demonstrate the "gravity of the alleged error" because he derived a benefit by entering into the plea agreement.  *See Mabry v. Shartel*, 632 F. App'x 707, 711 (3d Cir. 2015) ("because [Movant] entered into a plea agreement, he cannot demonstrate the gravity of the alleged error.")  If Movant had proceeded to trial and had been found guilty of Counts Four and Nine, he faced a possible maximum statutory penalty of life in prison.  (D.I. 107-1 at 15)  By entering a plea agreement, however, the Government agreed to not oppose a two-level reduction in the offense level for Movant's affirmative acceptance of responsibility, and also agreed to move to reduce the offense level by one additional level if Movant's offense level was greater than sixteen prior to the application of the acceptance of responsibility reduction.  (D.I. 50 at 3-4)  Pursuant to its sentencing memorandum, the Government recommended a sentence of eighteen years of imprisonment, which represented a request for a 30-month downward variance.  (D.I. 66 at 1; D.I. 107-2 at 22)  The Court imposed an 18-year sentence, noting that it reflected a 30-month downward variance.  (D.I. 71; D.I. 107-2 at 31)

---

[4]*United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005).

Second, the Government would be adversely impacted if Movant were permitted to challenge his sentence. Not enforcing the collateral waiver would circumvent the gatekeeping requirements of § 2255 and provide an alternative route for more prisoners to challenge the propriety of their sentences. *See Mabry*, 632 F. App'x at 711.

Finally, Movant agreed to the result of the waiver, and permitting Movant to avoid the waiver would corrupt the bargain reached between Movant and the Government. *See Khattak*, 273 F.3d at 561 ("Allowing defendants to retract waivers would prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens."). Thus, after considering the *Khattak* factors, the Court concludes that enforcing the collateral attack waiver at issue will not result in a miscarriage of justice.

Having determined that the waiver was knowing and voluntary, and that its enforcement will not result in a miscarriage of justice, the Court concludes that the collateral attack waiver in this case is valid. Accordingly, the Court will enforce Movant's valid collateral attack waiver and dismiss Claim Seven on that basis.[5]

---

[5]Even if the collateral attack waiver did not bar the Court from considering Claim Seven, the Court would dismiss the Claim as meritless. Although the Court did comment during the sentencing hearing that it had been prepared to sentence Movant to at least 19 years, the Court explained that, after hearing from all parties, it had concluded that 18 years was appropriate. (D.I. 107-2 at 31) The record demonstrates that the Court reached this conclusion after conducting a very thorough sentencing proceeding, which included reviewing the PSR, the letters submitted by defense counsel, the psychological evaluation, and the sentencing memoranda from the Government and the defense. (D.I. 107-2 at 2-4) The sentence reflected the 30-month downward variance requested by Movant. (D.I. 107-2 at 31) All these circumstances rebut Movant's baseless assertion that the Court was prejudiced against him and predetermined his sentence.

## IV.    MOTIONS

Petitioner filed four motions during the pendency of the proceeding: (1) two Motions to Appoint Counsel (D.I. 76; D.I. 105); (2) a Motion to Compel Full Discovery (D.I. 89); and (3) a Motion to Proceed In Forma Pauperis (D.I. 91).  Having concluded that the instant § 2255 Motion does not warrant relief, the Court will dismiss as moot the Motions to Appoint Counsel and the Motion to Compel Discovery.  Additionally, the Court will dismiss the Motion to Proceed In Forma Pauperis as unnecessary, because there is no fee for filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  *See* Rule 3, 28 U.S.C. foll. § 2255 (advisory committee notes).

## V.    EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief.  28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255.  The record conclusively demonstrates that Movant is not entitled to relief under § 2255.  Therefore, the Court concludes that an evidentiary hearing is not warranted.

## VI.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate only if the movant "has made a substantial

24

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court has concluded that Claims One through Six in the instant § 2255 Motion lack merit, and Claim Seven is barred by the Plea Agreement's collateral attack waiver provision.  Reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## VII.    CONCLUSION

The Court concludes that Movant is not entitled to relief pursuant to Federal Rule of Criminal Procedure 33 or 28 U.S.C. § 2255.

The Court will issue an Order consistent with this Memorandum Opinion.

25